**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**AT KANSAS CITY**

| | |
|---|---|
| **TITAN FOWLES** ) | |
| **f/k/a/ Don Robert Curtis** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No.** |
| **v.** ) | |
| ) | |
| **ATCHISON AUTOMOTIVE PLAZA,** ) | |
| **INC. d/b/a LEWIS CHEVROLET** ) | |
| **BUICK** ) | **JURY TRIAL DEMANDED** |
| **SERVE:** ) | |
| **314 Woodlawn** ) | |
| **Atchison, KS 66002** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

COMES NOW, Plaintiff, by and through his undersigned counsel of record, and states and alleges as follows:

### PARTIES

1.      Plaintiff Titan Fowles is an individual Missouri resident, residing in Platte City, Missouri.  In November 2017, Plaintiff legally changed his name from Don Robert Curtis.

2.      Defendant Atchison Automotive Plaza, Inc. d/b/a/ Lewis Chevrolet Buick ("Defendant" or "Lewis Chevrolet") is a Kansas Corporation in the business of buying, selling, and trading vehicles.  It is located at 314 Woodlawn, Atchison, KS 66002.  Upon information and belief, Defendant is an authorized Chevrolet dealership.

### JURISDICTION AND VENUE

3.      Jurisdiction and venue in this Court are proper because the sale of the vehicle(s) at issue occurred in this District and because there is diversity jurisdiction in that Plaintiff and

Defendant are domiciled in different states and because the amount in controversy exceeds $75,000.00.

## FACTS COMMON TO ALL COUNTS

4.     In December 2017, Plaintiff purchased (or attempted to purchase) a 2013 Quad Cab truck from Defendant. As part of this attempted purchase, Plaintiff made a $2,400 down payment. Paperwork was executed during this visit, and Plaintiff took the vehicle home. During this visit, Defendant told Plaintiff that his financing had in fact already been approved and he was good to go.

5.     Because of his recent name change, Plaintiff purchased the vehicle primarily to help (re)establish a credit history for himself.

6.     A few weeks later, Defendant called Plaintiff and told him that he needed to bring the truck back.  Defendant represented to Plaintiff that his name change was interfering with the financing.

7.     Ultimately, Plaintiff ended up purchasing a 2008 Chevrolet Silverado. As part of this attempted purchase, Plaintiff made an additional down payment of $800.00, which combined with the prior down payment made his total down payment on the Silverado $3,200.00.

8.     The Retail Installment Contract ("RISC"), which provided the Truth in Lending disclosures, indicated that the cash price (excluding sales tax) of the Silverado was $16,975.00, with an amount financed of $13,977.45. Curiously, Defendant executed a standard Kansas Department of Revenue Declaration, under penalty of perjury, stating that Plaintiff's purchase price of the Silverado was $12,088.88.

9.     The RISC lists a different dealership, Lewis Auto Plaza Inc., out of Topeka, as the seller.

10.     Unfortunately, the Silverado was part of the well-known Takata airbag scandal. At the time of the sale, the Silverado was subject to an open recall related to the airbags (though there was no fix). However, Defendant neither attempted to fix the airbags nor told Plaintiff about the open recall.

11.     To the contrary, Defendant told Plaintiff that the Silverado had been checked over and everything was good on the Silverado, either implicitly or explicitly representing to Plaintiff that he would not have any issues (such as the Takata airbag issue).

12.     Plaintiff did not learn about the airbag recall until late August or early September 2018, when he went to a Cable Dahmer dealership to attempt to trade out of the Silverado.  At that time, Plaintiff wanted to trade into a newer vehicle because he travels to Texas regularly. Until Plaintiff learned about the airbag issue, his son would frequently ride in the front seat of the Silverado during those drives.

13.      Upon information and belief, Defendant knew about the Takata airbag issue in the Silverado before it sold it to Plaintiff.

14.     Had Plaintiff known the Takata airbag issue was present in the Silverado, he would not have purchased it.

15.     After learning about these issues, Plaintiff has attempted to call Defendant several times.  On one occasion, Plaintiff left a voicemail message stating that something serious had come up, and requested a return call.  To date, Defendant has not returned Plaintiff's call.

16.     Plaintiff has attempted to trade the Silverado in at another dealership, but that has been refused because of the Takata airbag issue.

17.     According to SaferCar.gov, the Takata airbag recall (Manufacturer recall: 2049152; NHTSA recall 16V383) was issued on the Silverado on or about May 27, 2016.

18.     As of May 3, 2019, there was no remedy yet available for the Silverado:[1]

VIN: 1GCEK19J48Z107027

Recall data refreshed on May 03,2019

**1 Unrepaired Recalls**
associated with this VIN

**May 27,2016**
**Manufacturer Recall Number**  2049152
**NHTSA Recall Number**  16V383
**Recall Status**   Recall Incomplete, remedy not yet available
**Summary**

Takata Corporation ("Takata") has decided that a defect which relates to motor vehicle safety

exists in certain 2007-2008 Cadillac Escalade, Escalade ESV, Escalade EXT, Chevrolet

Avalanche, Silverado 1500, Suburban, Tahoe, GMC Sierra 1500, Yukon, and Yukon XL vehicles.

This is based upon Takata's decision that front passenger airbag inflators it supplied to GM are

defective. GM has submitted to NHTSA a Petition for Inconsequentiality and NHTSA has

granted GM until August 2017 to complete its investigation and to submit all data supporting

the petition. If the petition is denied, GM will conduct a recall of the airbag inflators covered by

Takata's defect information report. For more information visit www.regulations.gov and search

for Docket No. NHTSA-2016-0124.

19.     General Motors' recall website, my.gm.com/recalls, also indicates that as of May

3, 2019 the remedy for this specific issue in the Silverado is not yet available:[2]

---

[1] https://www.nhtsa.gov/recalls (search for VIN: 1gcek19j48z107027) (last visited May 3, 2019).
[2] https://my.gm.com/recalls?vin=1GCEK19J48Z107027 (last visited May 3, 2019).

The following recalls and programs have been found for your 2008 Chevrolet Silverado LD

VIN: 1GCEK19J48Z107027

Results last updated: May 03, 2019

Recalls and/or programs for your vehicle in which repairs have not been completed are listed below.

**Safety & Non-Compliance Recalls**
What's this?

| GM Recall #: | NHTSA # | | Date Issued: |
|---|---|---|---|
| 2049152 | 16V383 | | May 27, 2016 |

**Recall Title:**

Passenger Airbag Inflators

**Recall Description:**

Takata Corporation ("Takata") has decided that a defect which relates to motor vehicle safety exists in certain 2007-2008 Cadillac Escalade, Escalade ESV, Escalade EXT, Chevrolet Avalanche, Silverado 1500, Suburban, Tahoe, GMC Sierra 1500, Yukon, and Yukon XL vehicles. This is based upon Takata's decision that front passenger airbag inflators it supplied to GM are defective. GM has submitted to NHTSA a Petition for Inconsequentiality and NHTSA has granted GM until August 2017 to complete its investigation and to submit all data supporting the petition. If the petition is denied, GM will conduct a recall of the airbag inflators covered by Takata's defect information report. For more information visit www.regulations.gov and search for Docket No. NHTSA-2016-0124.

**Safety Risk Description:**

The propellant in some types of Takata airbag inflators can degrade over time, especially after long term exposure in hot and humid regions. If the propellant degrades to a certain level, the inflators may rupture during deployment, causing serious or fatal injuries.

**Repair Description:**

The necessity of a remedy is dependent upon NHTSA's decision on GM's Petition for Inconsequentiality. Additional information will be available following that decision. In the meantime, you can also check the status of this recall at my.gm.com/recalls. GM considers your vehicle safe to drive.

**Recall Status:** INCOMPLETE. REMEDY NOT YET AVAILABLE

20.     Accordingly, Defendant executed a "yo-yo scam"[3] enabling it to get rid of a vehicle it knew to have a major and unrepairable safety issue.  Upon information and belief, the problem is non-repairable (to date) because there are not enough parts to make the repair in all of the affected vehicles.

---

[3] A yo-yo scam is a scam in which a car dealer sells (purportedly) a vehicle to a consumer, representing that financing and all terms are approved and final, and then later (usually a week or so later) tells them that something was wrong and either a higher down payment or higher interest rate is required.  In other circumstances, dealers will try to force the consumer into a different (usually less-desirable) vehicle. *See, e.g.*, https://www.responsiblelending.org/other-consumer-loans/auto-financing/research-analysis/Deal-or-No-Deal-How-Yo-Yo-Scams-Rig-the-Game.pdf (last visited May 3, 2019).

**COUNT ONE:**
**VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT**

21.     Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

22.     The Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-623 et seq., prohibits the use of deceptive and/or unconscionable acts and practices in connection with consumer transactions in Kansas.

23.     Plaintiff is a "consumer," as defined by K.S.A. § 50-624(b).

24.     Defendant is a "supplier," as defined by K.S.A. § 50-624(l).

25.     Plaintiff's purchase of the 2008 Chevy Silverado was a "consumer transaction," as defined by K.S.A. § 50-624(c).

26.     Plaintiff has been damaged and is "aggrieved" pursuant to the KCPA as a result of Defendant's conduct.

27.     The KCPA shall be liberally construed to promote its policies of protecting consumers from suppliers that commit deceptive and unconscionable acts and practices. K.S.A. § 50-623; Williamson v. Amrani, 283 Kan. 227, 234, 152 P.3d 60, 67 (2007).

28.     Defendant Lewis Chevrolet's violations of the Kansas Consumer Protection Act include, but are not limited to, the following:

    a.  Defendant made false and/or misleading representations of fact, knowingly or with reason to know, that the financing for the 2013 Quad Cab had been approved, in violation of K.S.A. § 50-626(b)(1)(A) and § 50-627(b)(6);

    b.  Defendant made false and/or misleading representations of fact, knowingly or with reason to know, about the quality of the Silverado, in violation of K.S.A. § 50-626(b)(1)(D) and § 50-627(b)(6);

    c.   Defendant willfully failed to state a material fact and/or willfully concealed, suppressed, and/or omitted the material fact of the Takata airbag issue in the Silverado, in violation of K.S.A. § 50-626(b)(3);

    d.   Defendant took advantage of Plaintiff's inability to reasonably protect his interests because of Plaintiff's ignorance of the Takata airbag issue, in violation of K.S.A. § 50-627(b)(1).

29.    Plaintiff is entitled to the recovery of the greater of his actual damages or statutory civil penalties in the amount of $10,000 *for each violation*.

30.    Plaintiff's actual damages include his garden variety emotional distress, which he endured after learning of the presence of the Takata airbag issue in the Silverado many months after his purchase.

31.    Plaintiff is also entitled to the recovery of his reasonable costs and attorneys' fees, pursuant to K.S.A. § 50-634(e).

32.    Because of Defendant's conduct, Plaintiff is entitled to, and does indeed request, rescission of the sale of the Silverado.

WHEREFORE, Plaintiff prays for judgment against Defendant(s) in such amount as is allowable by law and to be determined at trial, for his actual damages, statutory civil penalties, pre- and post-judgment interest at the greatest rate allowed by statute, for his reasonable attorneys' fees, and for such other and further relief as may be just and proper under the circumstances.

## COUNT TWO:
## FRAUD/FRAUD THROUGH SILENCE

33.    Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

34.     Defendant knew, before the sale of the Silverado to Plaintiff, that the Silverado suffered from the Takata airbag issue.

35.     At the time of the sale, Plaintiff did not know that the Silverado suffered from the Takata airbag issue.

36.     Plaintiff had no way of learning that the Silverado suffered from the Takata airbag issue unless Defendant told him.

37.     Because Defendant did not tell Plaintiff about the Takata airbag issue in the Silverado, Defendant knew Plaintiff did not know.

38.     A reasonable person would find the fact that the Silverado suffered from the Takata airbag issue important in deciding whether to purchase the Silverado and/or in negotiating the sale price.

39.     The fact that Defendant chose not to disclose the Takata airbag issue in the Silverado shows that it knew a reasonable person would find that fact important.  If Defendant thought that no reasonable person would find it important, Defendant would have volunteered the information.

40.     Accordingly, Defendant had a duty to disclose the presence of the Takata airbag issue in the Silverado to Plaintiff before the sale.

41.     Defendant made the informed, intentional decision not to disclose that issue to Plaintiff.  Because there was no way for Plaintiff to learn of the Takata issue in the Silverado other than through defendant, it was reasonable for Plaintiff to rely upon Defendant to communicate such facts.

42.     As a direct and proximate result of Defendant's failure to disclose the presence of the Takata airbag issue in the Silverado, Plaintiff has sustained damages.

43.     Defendant falsely represented to Plaintiff that the financing for the 2013 Quad Cab had been approved.  Defendant knew, or should have known, that this representation was false at the time it was made.

44.     Finance companies do not send rejection letters until well after the fact, meaning that the only way for Plaintiff to learn that the financing had not actually been approved on the Quad Cab would be through Defendant.

45.     Defendant also falsely represented the sale price to Plaintiff (and/or to the state of Kansas in a sworn declaration).  Plaintiff had no way of learning of the true sale price until after the paperwork had already been executed, at which point Plaintiff had no recourse.  Thus, Plaintiff reasonably relied upon Defendant's representations.

46.     Because Defendant falsely represented the sale price of the Silverado to Plaintiff, the loan for the Silverado financed more than the total sale price (i.e., cash price of the Silverado combined with the cost of all fees and add-ons), even after Plaintiff's down payment.

47.     Defendant knew, or should have known, that its representations were false, and Defendant did in fact make those representations willfully.

48.     As a result of Defendant's false representations, Plaintiff has been damaged.

49.     Defendant's conduct, as outlined herein, was intentional, willful, wanton, reckless, fraudulent, and/or with malice, thereby entitling Plaintiff to the recovery of punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendant(s) in such amount as is allowable by law and to be determined at trial, for his actual damages, punitive damages, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

50.     Plaintiff hereby demands a jury trial on all issues so triable.

## DESIGNATION OF PLACE FOR TRIAL

51.     Plaintiff hereby designates Kansas City, Kansas as the place for trial.

Respectfully submitted,

*/s/ Bryce B. Bell*
Bryce B. Bell          KS#20866
Mark W. Schmitz      KS#27538
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
MS@BellLawKC.com
*Attorneys for Plaintiff*